IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:25-cv-380

| | |
|---|---|
| STEWART ADRIAN BROWN, and<br>LISA MARIE MAHONEY,<br><br>    Plaintiffs,<br><br>v.<br><br>GEORGE LARRY GODINEZ-MENDOZA,<br>in his individual capacity; JOHN WILLIAM<br>CREASMAN, in his individual capacity; and<br>JOHN DOE, in his individual capacity,<br><br>    Defendants. | **COMPLAINT** |

    Plaintiffs bring this action against the Defendants in their individual capacities for compensatory damages and punitive damages, pursuant to 42 U.S.C. §§ 1983 and 1988; the Fourth Amendment to the U.S. Constitution; and the common law of the State of North Carolina, for assault, battery, trespass to chattels, and malicious conduct.

## JURISDICTION AND VENUE

    1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

    2.    Venue is properly set in the Western District of North Carolina pursuant to 28 U.S.C. § 1391, as the causes of action alleged herein arise from events occurring in this district.

## PARTIES

    3.    Plaintiff Stewart Adrian Brown is and at all relevant times has been a resident of Buncombe County, North Carolina. He is currently 71 years of age, was 70 years of age on November 5, 2024, and has been married to Lisa Mahoney for eleven years.

4. Plaintiff Lisa Marie Mahoney is and at all relevant times has been a resident of Buncombe County, North Carolina. She is currently 70 years of age, was 69 years of age on November 5, 2024.

5. Upon information and belief, Defendant George L. Godinez-Mendoza ("Godinez-Mendoza") is and at all relevant times has been a resident of Henderson County, North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual capacity.

6. Upon information and belief, Defendant John William Creasman (hereinafter, "Creasman") is and at all relevant times has been a resident of Transylvania County, North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual capacity.

7. Upon information and belief, Defendant John Doe (hereinafter, "Doe"), whose identity is unknown at the time, is and at all relevant times has been a resident of the State of North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual capacity. Defendant Doe will be identified in an amended pleading and, if necessary, served with process as soon as Plaintiffs discover his identity, in the due course of time.

8. The Defendants are "persons" within the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and each has the capacity to be sued for the claims presented in this action.

9. At all times relevant hereto, the actions and omissions of the Defendants that are the subject of this Complaint were undertaken while acting under color of state law, statute, ordinance, regulation, custom or usage.

**FACTUAL ALLEGATIONS**

10. On November 5, 2024, at approximately 9:00 p.m., Plaintiff Brown was driving his 2012 Toyota Prius northbound on I-26 near Hendersonville, with Plaintiff Mahoney in the passenger seat. They had just left dinner with friends and were returning home to Asheville.

11. Defendant Troopers Godinez-Mendoza and Creasman, in a marked patrol car, began following Plaintiffs shortly after they merged onto I-26 from Highway 64. Godinez-Mendoza, a recent graduate of Basic Highway Patrol School, was undergoing field training and was being supervised by Creasman.

12. After about two minutes, Godinez-Mendoza activated his blue lights, followed seconds later by his siren at Creasman's instruction.

13. Brown, traveling under the 55-mph construction-zone speed limit, continued driving cautiously. Brown planned to exit safely at the upcoming Exit 44 rather than stop on the shoulder in dark, rainy conditions.

14. As the patrol car followed, Creasmen directed Godinez-Mendoza with commands such as "Get up on him" and "Just breathe, relax."

15. The exit to the Hendersonville Weigh Station was blocked with barrels, making it an unsafe location to stop. A high-roof van passed Plaintiffs on the left, and they passed another trooper conducting a stop on the right shoulder just before the exit to the weigh station.

16. About ninety seconds after initiating blue lights, Creasman instructed Godinez-Mendoza to report the Plaintiffs as a "fleeing vehicle" despite their continued low speed. The dispatcher was told the reason for initiating the stop was an "expired tag."

17. Less than ninety seconds later, Creasman announced over the radio his intent to execute a PIT maneuver, with approval from Defendant Doe ("Sarge"). Another vehicle, a Subaru Crosstrek, safely passed Plaintiffs during this time, confirming traffic was not endangered.

18. Defendant Doe asked on the radio for their location and then stated that Creasman and Godinez-Mendoza were authorized to stop the vehicle if it was "safe to do so."

19. As Plaintiffs' Prius approached Exit 44 at about 50 mph, Creasman coached Godinez-Mendoza through the maneuver: "Ease up beside him . . . take it slow . . . right here." Godinez-Mendoza then struck the left rear of Plaintiffs' Prius, sending it into the concrete median barrier. The Prius was totaled.

20. Troopers exited with weapons drawn, ordered Plaintiffs from the vehicle at gunpoint, handcuffed them, and detained them roadside for nearly twenty minutes while the vehicle was searched. Brown was then arrested and charged with expired registration, fleeing to elude, and related traffic offenses – all of which were later dismissed and expunged.

21. Brown believes that his vehicle registration had lapsed in 2022 when an automatic renewal was rejected pending an inspection, a fact unknown to him.

22. Brown also suffers from an epiretinal membrane in his right eye, causing glare and visual distortion, which, combined with rain, darkness, and emergency lights, made pulling to the shoulder unsafe. He intended to exit the interstate at Exit 44 before Defendants disabled his vehicle.

23. As a direct result of the Defendants' above-described conduct, Plaintiffs suffered destruction of their vehicle, unlawful arrest and detention, significant emotional distress, and other compensatory damages.

24. Brown also suffered physical injury to his left knee during the crash, for which he sought and received medical evaluation and treatment.

4

Case 1:25-cv-00380-MR-WCM     Document 1     Filed 10/29/25     Page 4 of 13

## FIRST CAUSE OF ACTION
### Use of Excessive Force in Violation of
### The Fourth Amendment and 42 U.S.C. § 1983
### by Defendant Godinez-Mendoza

25. Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. Plaintiffs were both seized and detained by Godinez-Mendoza who, acting under color of state law, exerted physical control over them through means intentionally applied.

27. In the course of seizing and detaining the Plaintiffs, Godinez-Mendoza unnecessarily and maliciously injured the Plaintiffs and their personal property.

28. The force used by Godinez-Mendoza to stop the Plaintiffs in their vehicle was excessive and unreasonable under the circumstances, in violation of the Plaintiffs' rights under the Fourth Amendment of the Constitution of the United States, including that:

   a. Brown was at all times driving less than the posted work-zone speed limit of 55 miles per hour.

   b. Neither of the Plaintiffs posed a threat to the safety of the officers or the public at any time.

   c. Godinez-Mendoza followed Brown on I-26 for approximately two minutes before turning on the blue lights of his patrol car to signal a traffic stop.

   d. When Godinez-Mendoza turned on his blue lights to signal a traffic stop, the only "crime" Brown had committed was driving with an expired registration tag.

   e. At least two cars safely passed the Plaintiffs and the Defendants in the left-hand lane of I-26 during the pursuit.

   f. Brown did not pull over because he was uncertain about where to pull over safely due to several factors, including:

   i. The condition of his right eye;
   ii. The darkness of the night;
   iii. The rainy conditions;
   iv. The orange-and-white barrels blocking the weigh station exit; and
   v. The glare of the emergency lights in his rear-view and side mirrors.

g.   Creasman decided to instruct Godinez-Mendoza to do a PIT maneuver and made a radio announcement about that decision less than three minutes after Godinez-Mendoza first turned on his blue lights to signal a traffic stop.

h.   Mahoney was riding as a passenger in the 2012 Toyota Prius and had no control of the vehicle as it was driven by Brown.

29.   Plaintiffs' rights under the Fourth Amendment were sufficiently clear that a reasonable law enforcement officer in Godinez-Mendoza's position would have understood that what he was doing violated those rights.

30.   Godinez-Mendoza's violation of the Plaintiffs' rights under the Fourth Amendment and 42 U.S.C. § 1983 directly and proximately caused the Plaintiffs to suffer destruction of their vehicle, unlawful arrest and detention, and significant emotional distress, and caused Brown to suffer physical injury.

31.   Godinez-Mendoza's conduct was also reckless and done with callous indifference to Plaintiffs' rights under the Fourth Amendment and of such a nature that punitive damages should be imposed, under 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
**Supervisory Liability under 42 U.S.C. § 1983**
**by Defendant Creasman**

32.   Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.   During the pursuit of the Plaintiffs, Creasman was at all times acting as a supervisor over Godinez-Mendoza, who was a recent graduate of Basic Highway Patrol School and was receiving field training.

34.   Creasman had actual and constructive knowledge that Godinez-Mendoza was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the Plaintiffs.

35. Creasman failed to respond to prevent Godinez-Mendoza from violating the Plaintiffs' well-established constitutional rights and, in fact, encouraged and directed Godinez-Mendoza to conduct a PIT maneuver to disable the Plaintiffs' vehicle when there was no lawful justification for doing so.

36. Creasman's inaction in response to Godinez-Mendoza's use of excessive and unreasonable force against the Plaintiffs was a proximate cause of Godinez-Mendoza's violation of the Plaintiffs' rights under the Fourth Amendment and 42 U.S.C. § 1983, and resulting damages to the Plaintiffs.

37. Creasman's conduct was also reckless and done with callous indifference to Plaintiffs' rights under the Fourth Amendment and of such a nature that punitive damages should be imposed, under 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION
### Supervisory Liability under 42 U.S.C. § 1983
### by Defendant John Doe

38. Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. During the pursuit of the Plaintiffs, Defendant John Doe was at all times acting as a supervisor over both Godinez-Mendoza and Creasman and, upon information and belief, held the rank of Sergeant.

40. Defendant Doe had actual and/or constructive knowledge that Godinez-Mendoza and Creasman were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the Plaintiffs.

41. Defendant Doe failed to respond to prevent Godinez-Mendoza and Creasman from violating the Plaintiffs' well-established constitutional rights and authorized a PIT maneuver to disable the Plaintiffs' vehicle when there was no lawful justification for doing so.

7

42. Defendant Doe's authorization of Creasman's request to disable the Plaintiffs' vehicle was a proximate cause of both Creasman's and Godinez-Mendoza's violation of the Plaintiffs' rights under the Fourth Amendment and 42 U.S.C. § 1983, and resulting damages to the Plaintiffs.

43. Defendant Doe's conduct was also reckless and done with callous indifference to Plaintiffs' rights under the Fourth Amendment and of such a nature that punitive damages should be imposed, under 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION
### Common-Law Assault
### by Defendant Godinez-Mendoza

44. Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Godinez-Mendoza committed an intentional act or display of force and violence that threatened the Plaintiffs with immediate bodily injury when he initiated the PIT maneuver.

46. Godinez-Mendoza's act or display caused the Plaintiffs to have a reasonable apprehension of imminent harmful contact with their person.

47. A person of ordinary care and prudence under the same or similar circumstances would have believed that harmful bodily contact was about to occur.

48. Such conduct by Godinez-Mendoza constitutes assault under the common law of North Carolina, which directly and proximately caused the Plaintiffs to suffer significant emotional distress.

49. Godinez-Mendoza's conduct constituting assault, which is an intentional tort, pierces the veil of public official immunity under the common law of North Carolina and entitles Plaintiffs to recover compensatory damages from Godinez-Mendoza in his individual capacity.

50. Godinez-Mendoza's conduct constituting assault was willful and wanton within the meaning of Chapter 1D of the North Carolina General Statutes, which entitles Plaintiffs to recover punitive damages from Godinez-Mendoza, to deter him and others from committing similar wrongful acts.

### FIFTH CAUSE OF ACTION
### Common-Law Battery
### by Defendant Godinez-Mendoza

51. Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. Godinez-Mendoza acted for the purpose of causing harmful or offensive contact with the Plaintiffs, when he knew or reasonably should have known that such contact was substantially certain to result from his conduct.

53. Godinez-Mendoza also acted in reckless disregard as to whether his actions would cause harmful or offensive contact with the Plaintiff, when he knew or reasonably should have known that such contact was substantially certain to result from his conduct.

54. Godinez-Mendoza's actions in causing harmful or offensive contact with the Plaintiffs were done without justification, as the Plaintiffs were unarmed and were not threatening the Defendants and did not pose a threat to them or to any other person.

55. Such conduct by Godinez-Mendoza constitutes battery under the common law of North Carolina, which directly and proximately caused the Plaintiffs to suffer significant emotional distress, and caused Brown to suffer physical injury.

56. Godinez-Mendoza's conduct constituting battery, which is an intentional tort, pierces the veil of public official immunity under the common law of North Carolina and entitles Plaintiffs to recover compensatory damages from Godinez-Mendoza in his individual capacity.

57. Godinez-Mendoza's conduct constituting battery was willful and wanton within the meaning of Chapter 1D of the North Carolina General Statutes, which entitles Plaintiffs to recover punitive damages from Godinez-Mendoza, to deter him and others from committing similar wrongful acts.

## SIXTH CAUSE OF ACTION
### Trespass to Chattel
### by Defendant Godinez-Mendoza

58. Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Plaintiff Brown was the titled owner of the blue 2012 Toyota Prius, and Plaintiff Mahoney had a marital property interest in the vehicle, at the time of the events described above.

60. At all times, Plaintiffs had actual possession of their 2012 Toyota Prius during the events described above.

61. Godinez-Mendoza's actions were unauthorized and unlawfully interfered with Plaintiffs' valuable personal property.

62. Such conduct by Godinez-Mendoza constitutes trespass to chattel under the common law of North Carolina, which proximately caused the Plaintiffs to suffer compensatory damages due to the destruction of their vehicle.

63. Godinez-Mendoza's conduct constituting trespass to chattel, an intentional tort, pierces the veil of public official immunity under the common law of North Carolina and entitles Plaintiffs to recover compensatory damages from Godinez-Mendoza in his individual capacity.

64. Godinez-Mendoza's conduct constituting trespass to chattel was willful and wanton within the meaning of Chapter 1D of the North Carolina General Statutes, which entitles Plaintiffs to recover punitive damages from Godinez-Mendoza, to deter him and others from committing similar wrongful acts.

# SEVENTH CAUSE OF ACTION
## Malicious Conduct
## by Defendant Godinez-Mendoza

65. Plaintiffs re-allege and incorporate by reference each and all of the allegations stated in Paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. Godinez-Mendoza at all times had a legal duty not to use unnecessary and unreasonable force in effectuating a traffic stop of the Plaintiffs as they were traveling in their vehicle within the posted speed limit and were not posing a risk of harm to either of the Defendants or to the public.

67. Godinez-Mendoza breached that duty when he used potentially lethal force to stop the Plaintiffs in their vehicle by the execution of a PIT maneuver, which totaled the Plaintiffs' vehicle and was clearly excessive and unreasonable under the circumstances.

68. Godinez-Mendoza's actions were done willfully, wantonly, and contrary to a duty of conduct imposed by law, and were intended to be injurious to the Plaintiffs.

69. Godinez-Mendoza's actions were so reckless, or so manifestly indifferent to the consequences, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent, even if Godinez-Mendoza did not act out of a sense of personal ill will towards the Plaintiffs that activated or incited him to undertake the conduct that resulted in harm to the Plaintiffs.

70. Such actions by Godinez-Mendoza constitute malicious conduct under the common law of North Carolina, which directly and proximately caused the Plaintiffs to suffer destruction of their vehicle, unlawful arrest and detention, and significant emotional distress, and caused Brown to suffer physical injury.

71. Godinez-Mendoza's malicious conduct pierces the veil of public official immunity under the common law of North Carolina and entitles Plaintiffs to recover compensatory damages from Godinez-Mendoza in his individual capacity.

72. Such conduct by Godinez-Mendoza was willful and wanton within the meaning of Chapter 1D of the North Carolina General Statutes, which entitles Plaintiffs to recover punitive damages from Godinez-Mendoza, to deter him and others from committing similar wrongful acts.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1. That this Court enter judgment declaring that Plaintiffs' federal constitutional rights were violated by the Defendants as described herein, pursuant to 28 U.S.C. § 2201 – 2202.

2. That Plaintiffs recover compensatory and punitive damages from the Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983 and the Fourth Amendment for violation Plaintiffs' right to be free from unreasonable and excessive force during a traffic stop.

3. That Plaintiffs recover compensatory and punitive damages from Defendant Godinez-Mendoza based on their common-law claim for assault.

4. That Plaintiffs recover compensatory and punitive damages from Defendant Godinez-Mendoza based on their common-law claim for battery.

5. That Plaintiffs recover compensatory and punitive damages from the Defendant Godinez-Mendoza based on their common-law claim for trespass to chattel.

6. That Plaintiffs recover compensatory and punitive damages from the Defendant Godinez-Mendoza based on their common-law claim for malicious conduct.

7. That Plaintiffs be awarded their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b), and as otherwise allowed by law.

8. That Plaintiffs be awarded their costs and expenses of this action.

9. That pre-judgment interest and post-judgment interest on all monetary relief awarded to the Plaintiffs be included in the judgment.

10. For a jury trial on all issues so triable.

11. For such other and further relief that the Court deems appropriate.

This the 29th day of October, 2025.

                                                              s/ Stephen P. Agan  
                                                              Stephen P. Agan  
                                                              NC Bar No. 35763  
                                                              Attorney for Plaintiffs  
                                                              Hyler & Agan, PLLC  
                                                              38 Orange Street  
                                                              Asheville, NC 28801  
                                                              Phone: (828) 254-1070  
                                                             E-mail: steve@hylerandagan.com

13

Case 1:25-cv-00380-MR-WCM    Document 1    Filed 10/29/25    Page 13 of 13